(No. 76-CC-1140—▆▆▆▆)

DAVID L. GRAVES, EMPLOYERS INSURANCE COMPANY OF WAUSAU and WILLIAM SOMMERS, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 18, 1978.*

HAROLD O. WERNER, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; GEORGE B. GILLESPIE, Special Assistant Attorney General, for Respondent.

POLOS, C.J.

On October 25, 1974, the State of Illinois Department of Transportation issued a permit to Claimant, William Sommers, granting him authority to move one "Drott 50 Backhoe mounted on 5 Axle Tractor Semi-trailer" from Paxton, Illinois to a sewage plant located on U.S. 36 near Jacksonville, Illinois. The Drott 50 was owned by Claimant David Graves. The tractor and semitrailer were owned by Sommers.

By its terms, the permit was subject to provisions A and D-2 of Form BT991, which was attached to the permit. Provision A contained the following clause:

"The grantee assumes all responsibility for injury to persons or damage to public or private property, including his own, or the object being transported, caused directly or indirectly by the transportation of vehicles or vehicles and objects authorized under this permit. The grantee agrees to hold the State of Illinois harmless from all suits, claims, damages, or proceedings of any kind, and to indemnify the State of Illinois for any claim it may be required to pay arising from the movement."

Provision D-2 provided:

"Check heights of structures prior to move to insure adequate clearance."

The Department of Transportation prepared the route to be followed by Sommers. The permit recited that the tractor-trailer and Drott Crawler had an authorized height of 14 feet, six inches. The Department noted on the permit that an overpass on U.S. Highway 54, on the west side of Clinton, Illinois, was too low to permit passage of the load. The permit did not note any other overpasses along the route which were too low to accommodate the tractor-trailer. However, there was a second viaduct along the route which would not permit passage of the trailer.

On October 26, 1974, Sommers and Graves loaded the Drott Crawler on Sommer's tractor-trailer. David Meisenheimer, Sommers' employee, drove the rig. Claimant Graves rode in a separate car, driven by one Richard Harrison, to show the driver where the Crawler was to be unloaded.

When Sommers and Graves reached the viaduct at Clinton, Illinois, which had been noted on the permit, they stopped and lowered the height of the load to enable it to pass under the viaduct. Proceeding along the route indicated on the permit, they came to a viaduct approximately three miles east of Jacksonville, Illinois, which would only permit a 14 foot high load to pass underneath. The 14 foot high viaduct was not noted on the permit issued to Sommers, and as the tractor-trailer proceeded under the viaduct, the load struck the viaduct, demolishing the Drott Crawler and damaging the trailer.

To the east of the Jacksonville viaduct signs were posted advising of the 14 foot clearance. Graves said traffic was heavy as he approached the viaduct ahead of the tractor-trailer. The approach was on a down grade 2000 to 3000 feet long. Graves said that several vehicles had pulled between his car and the tractor-trailer, and that both vehicles were traveling at about the speed limit of 45 m.p.h.

Graves said that about one-fourth of a mile before the viaduct he saw a sign indicating a 14 foot high clearance. Graves testified that he suggested to Harrison that they pull over and help the truck get under the viaduct. Graves said he and Harrison both knew that the viaduct was too low to accommodate the truck. However, they did not pull over and attempt to signal the driver of the truck. Graves said that when he suggested that they stop their escort car, Harrison replied,

"Well, he'll know to stop if he sees that sign."

David Meisenheimer, the driver of the tractor-trailer, testified that he did not see the sign warning of the low viaduct. Meisenheimer said that when he saw that he was going to strike the viaduct he immediately applied his brakes. However, he feared the truck might jacknife, so he stopped braking and allowed the truck to hit the viaduct.

Claimant Graves alleges that the Drott Crawler had cost $68,000.00 and was a total loss. He received $50,000.00 in insurance proceeds from the Employers Insurance Company of Wausau, and recovered $10,000.00 by selling the damaged machine for salvage. He contends he was required to spend the sum of $4,500.00 to rent a similar machine to fulfill a contractual obligation, and thus claims total damages in the amount of $12,500.00.

Claimant Employers Insurance Company of Wausau seeks to recover the sum of $50,000.00 under it's subrogation agreement with Graves.

Claimant Sommers seeks to recover the sum of $1,424.66 for damages to his trailer, and for his out of pocket expenses incurred in clearing the highway of debris after the accident.

Claimants contend that the State owed them the duty to use reasonable care in issuing the permit for the transport of the Drott Crawler, and that this duty was breached when the State failed to advise Claimants of the existence of the low viaduct at Jacksonville, Illinois. Claimants further contend that the failure of the State to utilize reasonable care in issuing the permit was the proximate cause of the losses they suffered.

Respondent contends that the State did not owe

Claimants a duty to use reasonable care in issuing the permit and mapping the route. Respondent also argues that Claimants are barred from recovery by the contributory negligence of the driver of the tractor-trailer.

We agree with Claimant that the State of Illinois owed a duty to use reasonable care in issuing the permit for the passage of the oversize load, and in mapping a route for the transport of the load. This issue was decided in *Parkhill v. State, 25 Ill. Ct. Cl. 172.* There the State had issued a permit for the transport of an oversize load over a route which had been chosen by the Claimant. The load struck a viaduct, and Parkhill sued for damages. The State argued that it had no responsibility to provide Parkhill with a safe route, and that the damage to the load was proximately caused by Parkhill's negligent failure to advise himself of the clearance of the overpass. This Court held, however, that Claimant had a right to expect that the State would not permit the load to be carried over a dangerous route, and that it was not reasonable to expect the driver of the truck to stop and examine each overpass along the route.

The State also argued in *Parkhill* that the permit, which stated that the grantee assumed all responsibility for damage resulting from the movement of the load, absolved the State of responsibility. In rejecting that contention the Court said:

"***it is our conclusion that such a provision cannot be used by the State, as counsel for Respondent contends, to relieve itself of liability for negligence. We do not believe that an exculpatory clause is enforceable where, as here, the matter is one of public concern, and the party seeking exculpation is in a dominant position. (citing cases)."

We believe that *Parkhill* is determinative of the issue of the State's negligence. The State had knowledge of the existence of the Jacksonville Bridge, and

that the bridge was too low to accommodate the load for which it had issued a permit.

Once the State of Illinois undertook to map a route for the transport of the load, it had a duty to use reasonable care. The record establishes that the State had knowledge of the height of the Jacksonville viaduct, and we believe that in failing to so advise the grantee of the permit, it did not act in a reasonably prudent manner.

However, we find that David Meisenheimer, the driver of the tractor-trailer and Sommer's employee, was negligent in failing to observe signs warning of the low viaduct. Witnesses estimated that the signs were placed from one quarter mile to 400 feet from the bridge. Graves and Harrison, driving the escort car ahead of the tractor-trailer, observed the signs and contemplated stopping to warn the truck. They did not do so because they assumed that the driver of the truck would see the sign and stop to adjust the load.

There was no evidence offered to excuse Meisenheimer's failure to observe the sign. The fact that Graves and Harrison did see it, and assumed that Meisenheimer would also do so, is compelling evidence that Meisenheimer would have been reasonably expected to see and heed the warning. We must conclude that his failure to do so was negligence and that his negligence was a contributory cause of the accident.

As the State's negligence was not the proximate cause of Claimants' loss, we must deny this claim.